UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK THERIAULT, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-06-00206 |
| | § | |
| WM&B, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiff's Motion for Notice to Potential Class Members (Doc. # 12). Plaintiff filed this suit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). The FLSA authorizes individuals to assert such claims, on behalf of themselves and of other employees similarly situated, for their employers' wrongful failure to pay overtime wages. *Id.* Plaintiff now seeks to compel Defendant to provide a list of all employees who may be potential class members, and requests the Court to approve the issuance of notice to each of these employees, allowing them to "opt in" to this suit. *See id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Defendant argues that discovery and notice are inappropriate at this time because Plaintiff has failed to produce any evidence that similarly situated potential class members exist.

**I. Legal Standard**

While the Fifth Circuit has declined to endorse any particular standard for evaluating requests for notice to potential class members under the FLSA, it has affirmed district court decisions utilizing the lenient standard adopted by the United States District Court for the District of New Jersey in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See, e.g.*,

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-16 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). The two-step *Lusardi* approach requires a court, at the first stage, to decide whether notice of the action should be given to potential class members. *Id.* at 1213-14. The court's decision at this stage is usually based on the pleadings and affidavits that have been submitted, and is made using a "fairly lenient standard, [which] typically results in 'conditional certification' of a representative class." *Id.* at 1214. At the second stage of the *Lusardi* approach, which is usually prompted by a defendant's motion for decertification after some or all discovery has been completed, a court considers additional evidence submitted by the parties in determining whether to decertify the class on the ground that its members are not similarly situated. *Id.*

Even under the lenient standard of the first stage, a plaintiff must set forth "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" that violated the law. *Id.* at 1214 n.8 (citation omitted). Before authorizing notice to potential class members, a court "should satisfy itself that there are other employees of the [employer] who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991); *see also Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 119 (D.D.C. 2004) (determining whether employees were similarly situated, for purposes of an FLSA collective action, on the basis of such factors as:  "(1) whether they all worked in the same corporate department, division and location; (2) whether they all advanced similar claims; and (3) whether they sought substantially the same form of relief") (citation omitted). Unsupported allegations that FLSA violations were widespread and that other similarly situated employees exist are insufficient to warrant notice to potential class members. *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983).

**II. Analysis**

In this case, Plaintiff has failed to produce evidence that there are similarly situated potential plaintiffs to whom class notice should issue. First, although Plaintiff describes his own duties, wages, and hours, he provides no factual details to show that the particular duties, wages, or hours of other employees were similar to his. In an affidavit attached to his reply, Plaintiff states that he worked as a wood craftsman and trim carpenter/trim man for Defendant, beginning in July 2004. Mark Theriault Aff. ¶¶ 2-3. Plaintiff's main job duties consisted of milling wood, installing trim, and other manual labor. Compl. ¶ 6. Plaintiff testifies that he was paid an hourly wage of $18.00, with "straight time pay" (i.e., his usual hourly wage of $18.00) for any hours that he worked over forty hours per week. Theriault Aff. ¶ 3. Plaintiff testifies that he worked an average of forty-seven hours per week while employed with Defendant. Theriault Aff. ¶ 3.

With respect to other employees, Plaintiff states that he is "aware of many nonexempt, hourly wood craftsmen, carpenters helpers, trim carpenters, trim men, mill wrights, and general laborers employed by [Defendant] who were denied overtime pay in that they were not paid time and one-half for their overtime hours and instead were paid their regular hourly wage." Theriault Aff. ¶ 5. Plaintiff does not, however, specify what duties were performed by the various other types of employees mentioned, what wages they were paid, or what hours they kept. It is unclear from Plaintiff's Complaint and affidavit, for example, whether any other employees worked close to an average of seven overtime hours per week, as Plaintiff states that he did. *See* Theriault Aff. ¶ 3. Plaintiff's conclusory statement that he is aware of other employees is insufficient to demonstrate that other employees are similarly situated.

On the contrary, the evidence presented by both parties indicates that Defendant's employees had varying duties and wages, and that they worked on different projects, in different geographic locations, and under different supervisors. In Plaintiff's affidavit, for example, he

3

identifies six different types of jobs (wood craftsmen, carpenters helpers, trim carpenters, trim men, mill wrights, and general laborers) held by employees. Theriault Aff. ¶ 5. Employees were paid different wages depending on the type of jobs they held. For example, Plaintiff was paid an hourly wage of $18.00 as a trim carpenter, while carpenter's helpers were paid an hourly wage of $10.00 to $15.00, and general laborers were paid an hourly wage of $7.00 to $10.00. Joel Brownlee, Managing Member and Custodian of Records for WM&B, LLC, Aff. ¶¶ 3, 5. Employees also performed different duties depending on their job types. Trim carpenters' duties included repairing windows by removing rotted wood and installing new wood trim, as well as installing wood doors. Brownlee Aff. ¶ 3. Carpenter's helpers' duties, meanwhile, included cutting wood, delivering materials, and assisting trim carpenters, while general laborers' duties involved clean up at a job site. Brownlee Aff. ¶ 5.

Additionally, Defendant's employees worked on various construction projects located throughout the State of Texas. Brownlee Aff. ¶ 2. Employees would thus have been subject to the management of different supervisors, depending on the project on which they worked. Plaintiff, for example, worked on projects at the Fayette County courthouse and the National Bank & Trust in La Grange, Texas, as well as the Cameron County courthouse in Brownsville, Texas. Brownlee Aff. ¶ 4. Because Defendant did not employ more than one trim carpenter on any given project, Plaintiff would have been the only employee of that job type at each of the projects on which he worked. *See* Brownlee Aff. ¶ 6. In light of these differences – in job duties, wages, project assignments, geographic location, and supervision – Plaintiff's affidavit and Complaint do not demonstrate the existence of similarly situated employees.

Plaintiff further asserts that class notice is appropriate because "[t]here was a uniform policy at [Defendant] whereby all hourly employees, including wood craftsmen, carpenters helpers, trim carpenters, trim men, mill wrights, and laborers were not paid time and one-half for

4

their overtime hours and were instead paid for their overtime hours at their normal hourly rate." Theriault Aff. ¶ 5. Aside from Plaintiff's unsubstantiated statement that he is "aware of many" such employees, however, Plaintiff has not produced any evidence of such a uniform policy of violating the FLSA. Plaintiff does not identify any other employees, nor does he provide any evidence that other employees worked overtime hours. Additionally, Plaintiff has failed to show that any other employees would be willing to opt in to his proposed class. Because Plaintiff has not presented any evidence, other than his own, conclusory statements, that there are similarly situated employees who would opt in to his proposed class, notice to potential class members is not warranted.

### III. Conclusion

Plaintiff's Motion for Notice to Potential Class Members is **DENIED** without prejudice to later refiling. Should facts arise as the case advances, which would warrant the issuance of notice to similarly situated potential class members, Plaintiff may file a new motion for notice with the Court.

**IT IS SO ORDERED**.

**SIGNED** this 18th day of August, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT